Mr. Chief-Justice Waite
delivered the opinion of the court:
During the war of the rebellion, Whitfield, a resident of the State of Alabama, being the owner of 177 bales of cotton raised by himself, sold it to the Confederate States government, agreeing to receive in payment the eight-per-cent, bonds of the Con *459 federate States. In January, 18G5, payment of tlie purchase-price was made and accepted in bonds of the kind agreed upon, payable to bearer, and falling due in the years 1868, 1871, and 1880. Whitfield kept the bonds in his possession, and, at the trial of this case below, produced them in open court. The cotton was never taken away by the Confederate States authorities, but remained in the possession of Whitfield until September 1, 1865, when it was seized by the Treasury agents of the United States, acting under color of the authority of the Abandoned and captured property Acts. After the seizure, 59 bales were restored to Whitfield, pursuant to an arrangement made with him, as compensation for putting the cotton in good order, aud the remaining 118 bales sent forward to New York, where they were sold by the cotton agent of the United States, and the proceeds paid into the Treasury. This suit was brought to recover these proceeds.
Iu United States v. Huckabee, (16 Wall., 414,) we held that real property purchased by and conveyed to the Confederate States during the war passed to the United States at the restoration of peace, by capture, and we sustained the title of the United States thus acquired against a claim made by the vendors of the Confederate States, that the conveyance was obtained from them by duress. The same principle was recognized and acted upon in United States v. Titus, (21 Wall., 475.) WTe have thus decided that the Confederate States government could acquire title to real property by purchase, and it is not easy to see why a different rule should be applied to personal property. The ownership of that, even more than real property, was required for the operations of the confederacy. Contracts of sale made in aid of the rebellion will not be enforced by the courts, but completed sales occupy a different position. As a general rule, the law leaves the parties to illegal contracts where it finds them, and affords relief to neither. A sale of personal property, when completed, transfers to the purchaser the title of the property sold.
Whitfield’s sale in this case was not on credit, but for bonds which passed from hand to hand as money. The transaction in this respect was not different from a sale to the United States for any of their public securities payable at a future day. The sale was complete when the bonds were accepted in payment. The title then passed to the Confederate States without a for *460 mal delivery. From that time Whitfield ceased to be the owner of the cotton.
The claim, then, that he had the right to retain the possession of the cotton until the purchase-money was paid, because of the insolvency of the Confederate government, is not applicable to the facts established by the evidence, as the purchase-money had been paid before the insolvency. Butif this were otherwise, it is not easy to see how his claim, growing out of his illegal contract as it does, can be enforced against the United States in the Court of Claims. In Sprott v. United States, (20 Wall., 463,) it was decided that one owing allegiance to the Government of the United States could not avail himself of the courts of the country to enforce a claim under a contract by which, for the sake of gain, he knowingly contributed to the “ vital necessities of the rebellion.” For that reason we refused to give effect to a purchase of cotton from the confederate government. This case is not distinguishable from that iu principle. Cotton, as we have often said, was, during the late war, as much hostile property as the military supplies and munitions of war it was used to obtain. When Whitfield, therefore, sold his cotton to the confederacy and took their bonds in payment, he contributed directly to the means of prosecuting the rebellion. He says in his petition, it is true, that his sale was not made to aid the rebellion; but the purchase was clearly for that purpose and no other. This he could not but have known. Under such circumstances “he must be taken to intend the consequences of his voluntary act.” (Hanauer v. Doane, 12 Wall., 347.) By his sale he knowingly devoted his cotton to the war, and his rights must follow its fortunes. The courts of the country would not relieve him against one who held title by conveyance from the Confederate States, and under that title had obtained possession. Neither would they interfere in behalf of a purchaser from the Confederate States, to enforce possession under his sale. But when his possession has been lost by reason of his sale, no matter how, the courts will afford him no relief against the loss. Having by his acts entered the lists against his rightful Government, he cannot, if he loses, ask it for protection against what he has voluntarily done. In this case he seeks to enforce a right growing out of his contract of sale, which was tainted with the vice of the rebellion. It was a contract which could not have been enforced against *461 him, and he is equally powerless under its provisions against others. He seeks, in effect, by this action to recover, in the courts of the United States, the purchase-money due from the Confederate States, upon the principle that a sale upon credit implies a guarantee of the solvency of the purchaser until the payment is made. We have already seen that such is not his position here; but if it were, having lost his possession he has no standing in court for relief. He is not the owner of the property, and his lien is not one the courts of the United States will enforce.
The judgment of the Court of Claims is affirmed.